FLAVILLA WILLIAMS

*vs.*

THE MAINE STATE RELIEF ASSOCIATION.

Androscoggin. Opinion April 25, 1896.

*Insurance. Benefit Associations. Assessments. Waiver. Agent.*

In an action brought by the beneficiary under a benefit certificate issued by a mutual benefit association, the promise to pay was conditioned upon the member being in good standing in the association at the time of his death. The defense set up that he was not in good standing at that time; and it was *held*: That such defense had been waived.

Where assessments have been levied and paid subsequent to those unpaid, and upon which a forfeiture might have been claimed, such subsequent assessments and acceptance of money paid upon them, constitute a waiver of such right to avoid a certificate for delay of payment.

An unconditional acceptance upon assessments is a waiver of all former known grounds of forfeiture.

Although an agent has no authority to bind the company by receiving payment of a premium after it is due, the company may waive it at any time. If the

company receives it from their agent after it has become due, it will be held to have known when it had been paid to such agent, and, by receiving it from him without inquiry, to have waived the right to insist on delay of payment as a ground of forfeiture of the policy. ·

A waiver may be inferred from circumstances which show that the parties understood the payment of a premium when due would not be required, or a forfeiture claimed.

Agents, in order to bind the company, whether it be a mutual benefit or stock company, must have authority to waive a compliance with the conditions upon a breach of which a forfeiture is claimed, or to waive the forfeiture when once incurred, or their acts in waiving such compliance or forfeiture must be shown to have been subsequently ratified or approved by the company.

Such ratification or approval may be properly inferred when it is shown that the over due premiums paid to them have been turned over to, and received and retained by, the company.

AGREED STATEMENT.

The case is stated in the opinion.

*F. L. Noble and R. W. Crockett,* for plaintiff.

*S. L. Larrabee and E. C. Reynolds,* for defendant.

The non-payment by Williams of assessments Nos. 90 and 91 on or before September 15th, 1893, did not simply operate a mere suspension or temporary cessation of his interest, but per se, without any affirmative act or proclamation by the defendant corporation, worked an absolute forfeit of any benefit to be derived from the association. *Richards* v. *Maine Benefit Asso.* 85 Maine, 101.

Under a law of a mutual benefit society, which makes the non-payment of assessments for a given period of time after notice, operate as an expulsion, ipso facto, of the delinquent member, and a forfeiture of his rights in the benefit fund, it is not necessary that the expulsion and forfeiture should be judicially determined by any judicatory of the society. *McDonald* v. *Ross-Lewin,* 29 Hun, (N. Y.) 87.

Where the laws of a society provide that, if a member neglects or refuses to pay an assessment within a specified time, he shall cease to be a member, and the secretary shall strike his name from the roll, such laws are self-executing, and the member so omitting to pay loses his right as a member, although the secretary does not

strike his name from the roll.   *Rood* v. *Railway Passenger*, etc., *Ben. Ass'n*, 31 Fed. Rep. 62.

Having forfeited all his rights of benefits and his membership in the defendant association, Williams could be re-instated and re-admitted to membership in the association only by a compliance on his part with the conditions of Article XII of the By-Laws.   Williams never invoked any of the proceedings required for re-instatement.   His membership was subject to the operation and effect of the by-laws of the association.   Niblack on Mutual Benefit Societies, p. 344, § 325.

No action was taken nor could be taken by the association in respect to Williams' membership, but after waiting a reasonable time for his application for re-instatement and proof of "sound health," the money paid by Williams was returned.   But even if the money had been retained by the secretary, that would not have entitled Williams to have claimed to be re-instated to the rights and benefits of a member of the association.   The secretary had no power to admit Williams a member thereby making a contract of insurance with him.   *Swett* v. *Relief Society*, 78 Maine, 545; *Burbank* v. *Boston Police Relief Ass'n*, 144 Mass. 437 ; Niblack on Mutual Benefit Societies, p. 364, § 348.

Where, under the laws of a benefit society, the only way in which a member not in good standing can be re-instated is by obtaining a new medical certificate. and a majority vote, payment of assessments, after suspension, to the financial secretary or to the supreme treasurer, do not constitute a re-instatement, as those officers have no authority to waive its laws.   *Lyon* v. *Supreme Assembly*, etc., 153 Mass. 83.

Waiver:   After a policy has been forfeited it cannot be renewed except by express agreement.   A waiver never occurs unless intended, or unless the act relied on ought in equity to estop the party from denying it.   *Diehl* v. *Mutual Ins. Co.*, 58 Pa. St. 443 ; see *Leonard* v. *Lebanon Mutual*, etc.   3 Weekly Notes of Cases, 327.

A waiver of a right pre-supposes a knowledge of the right waived, and is not to be inferred from a merely negligent act, or from one

done under a misapprehension of the real condition of the rights of the parties at the time. *Miller* v. *Union Central, etc.,* 110 Ill. 102; *Robertson* v. *Metropolitan, etc., Co.,* 88 N. Y. 54.

SITTING: PETERS, C. J., WALTON, FOSTER, HASKELL, WISWELL, STROUT, JJ.

FOSTER, J.    This is an action to recover the amount of $1500 alleged to be due the plaintiff as the beneficiary under a benefit certificate issued by the defendant, a mutual benefit association, to her husband, Eugene Williams, deceased.

The promise to pay the plaintiff is conditioned upon the member being in good standing in the association at the time of his death. The defense is, that he was not in good standing at that time. The reply is, that the defendant has waived that defense.

It appears that on July 15, 1893, two assessments, numbered 90 and 91, were laid on the members of the association, which were due and payable August 15, 1893, and upon the failure of the assured to pay the same on or before September 15, 1893, his membership would be forfeited in accordance with the by-laws of the association; that the insured did not pay the assessments on or before September 15, 1893, although due notice thereof was sent to him by mail; and it is claimed on behalf of the defendant that the assessments not being paid on or before said 15th day of September, a second notice was duly and seasonably mailed to the insured, but the reception of this is denied by the plaintiff. On September 1, 1893, two other assessments, numbered 92 and 93, were laid upon the insured which were due and payable October 1, 1893, of which he had due notice. On October 16th, 1893, assessments numbered 94 and 95 were also laid upon the insured payable November 15, 1893, and a regular notice thereof mailed to him on October 19th, by the secretary of the association.

The secretary would testify, as the agreed statement sets forth, that this last notice was sent to the insured unintentionally and by mistake.

The insured paid assessments numbered 90, 91, 92 and 93, on

October 24, 1893, to the assistant secretary of the association, at Lewiston, and the money thus received was by him sent to the secretary at Portland, on the same day, and, so far as appears from any evidence in the case, went into the hands of the defendant association, and was retained unconditionally till returned to the assistant secretary by the secretary immediately after the death of the insured, which occurred November 10, 1893.

The by-laws show that it was the duty of the secretary to pay to the treasurer of the association on the 1st and 15th of each month all moneys collected, taking his receipt therefor. As the money paid on these assessments was not returned to the assistant secretary till after the death of the insured, it is presumed to have come into the defendant's possession on the first day of November, for the law presumes that every man in his official character does his duty until the contrary is shown.

The matter of re-instatement of the insured was never laid before or considered by the executive board.

Assuming that the payment of the assessments on October 24, 1893, was too late to meet the requirement of the by-laws of the association, the question remains, whether the defendant, by the subsequent assessment of October 16, 1893, the reception and retention of the money paid upon the other assessments with no notice of any objection brought home to the assured, waived the conditions of forfeiture and its right to avoid the certificate of insurance on that ground.

We think it did.

Even where assessments have been levied and paid subsequent to those unpaid, and upon which a forfeiture might have been claimed, it has been held that such subsequent assessments and acceptance of money paid upon them, constituted a waiver of such right to avoid a certificate for delay of payment. *Rice* v. *New England Mutual Aid Society*, 146 Mass. 248.

In that case the court say: "Suppose the payment of the former assessment had never been made at all, and the company, without insisting upon the non-payment as a ground of forfeiture, had levied new assessments upon the assured, which were all duly

paid and accepted without condition; could it be contended that there was no waiver? An unconditional acceptance upon assessment waives all former known grounds of forfeiture, and this effect is not varied or limited because an acceptance of a former assessment had been on condition, and had not amounted to such waiver."

This principle has oftentimes been applied in cases of similar character where a forfeiture has been sought on the part of the insurer against the insured. It was applied in *Hodsdon* v. *Guardian Life Insurance Co.*, 97 Mass. 144, where it was held that, although an agent of the company had no authority to bind it by receiving payment of a premium after it was due, the company might waive it at any time; and if the company received it from their agent after it was due, it was bound to inform itself of the time when it had been paid to him, and that by receiving it from him without inquiry, it waived the right to insist on delay of payment as a ground of forfeiture of the policy.

So in *Insurance Co.* v. *Wolff*, 95 U. S. 326, where forfeiture was set up for non-payment of the premium at the time it became due, but which was subsequently paid to an agent of the company and a receipt delivered for the same. There, the premium was tendered back after the death of the insured and the receipt demanded. But the court held that the company, by the receipt of the premium, waived the forfeiture for non-payment at the stipulated time.

And in *Phœnix Life Ins. Co.* v. *Raddin*, 120 U. S. 183, the court held that the acceptance by insurers of payment of a premium, after they know that there has been a breach of a condition of the policy, is a waiver of the right to avoid the policy for that breach. "To hold otherwise," say the court, "would be to maintain that the contract of insurance requires good faith of the assured only, and not of the insurers, and to permit insurers, knowing all the facts, to continue to receive new benefits from the contract while they decline to bear its burdens."

This principle is too firmly established to be questioned, and the authorities are numerous where this doctrine has been applied, and

such is the current of modern decisions.    Among the cases where this rule has been applied, in addition to the foregoing, are the following, as a few of the more important ones.    *Bouton* v. *American Ins. Co.*, 25 Conn. 542 ;    *Bevin* v. *Conn. Ins. Co.*, 23 Conn. 244 ;    *Viele* v. *Germania Ins. Co.*, 26 Iowa, 9 ; *Ins. Co.* v. *Stockbower*, 26 Penn. St. 199 ; *Frost* v. *Saratoga Ins. Co.*, 5 Denio, 154, (49 Am. Dec. 234) ; *Wing* v. *Harvey*, 5 DeG., M. & G. (Eng. Chanc.), 265, 270 ; *Shea* v. *Mass. Benefit Asso.*, 160 Mass. 289, 294 ; *Rice* v. *New England Mutual Aid Soc.*, 146 Mass. 248 ; *Ins. Co.* v. *Norton*, 96 U. S. 234 ; *Appleton* v. *Phœnix Mutual Life Ins. Co.*, 59 N. H. 541.

In *Shea* v. *Mass. Benefit Asso.*, supra, where the defense set up forfeiture for non-payment within the stipulated time, the court held that where the company receives and retains the money but seeks to make its acceptance conditional, it must see to it that notice to that effect is actually brought home to the insured, and that the acceptance of money under an assessment after the expiration of the time of payment constitutes a waiver of all objection growing out of the delay.

The conditions of forfeiture contained in the contract of insurance are for the benefit of the association, and, of course, can be waived by it either before or after they are broken.    Being inserted for its benefit, it lies with the association to say whether or not they shall be enforced or waived.    Forfeitures are not favored in law, for, as was said in *Ins. Co.* v. *Norton*, 96 U. S. 234, 242, "they are often the means of great oppression and injustice."

It is true that in life insurance, time of payment is, as a general rule, material, and cannot be extended by courts against the assent of the company.    But it is equally true that where such assent is given, or where it may be inferred from the acts and conduct of the parties to the contract, courts are liberal in construing the transaction in favor of avoiding a forfeiture.    *Leslie* v. *Knickerbocker Life Ins. Co.*, 63 N. Y. 27 ;    *Helme* v. *Phila. Life Ins. Co.*, 61 Pa. St. 107.    And while a waiver is the intentional relinquishment of a known right, it may be inferred from any circumstances which show that the parties understood the payment of a premium when

due would not be required, or a forfeiture claimed.    *Currier* v. *Continental Life Ins Co.*, 53 N. H. 538, 549, 552; *Pierce* v. *Nashua Fire Ins. Co.*, 50 N. H. 297; *Heaton* v. *Manhattan Fire Ins. Co.*, 7 R. I. 502; *North Berwick Co.* v. *New England F. & M. Ins. Co.*, 52 Maine, 336, 340; *Ins. Co.* v. *Wolff*, 95 U. S. 326, 330.

But it is claimed in defense that the payment of the assessments to the assistant secretary was unauthorized, he having no authority to bind the association by the receipt of money upon assessments unless the same was paid within the time limited for their payment.

This would undoubtedly be true were it not for the fact that the money thus paid to him was immediately forwarded to the secretary of the association whose duty it was to turn the money over to the treasurer at the beginning and middle of each month.    It was paid to the man whose duty it was to receive it in the due course of business.    No notice was ever brought home to the assured by the association or any of its officers that it was not properly paid. Notwithstanding the case shows that the money was returned to the assistant secretary immediately after the death of the insured, the assistant secretary claims it was not thus returned till three months after his death.    From the evidence, and the presumption of law that those acting officially do their duty, till the contrary is proved, it would appear that the money was in the hands of the treasurer at the death of the insured.    If in the treasurer's hands it was received by the association.    *Swett* v. *Citizens Mut. Relief Society*, 78 Maine, 541.    In this particular the case at bar is to be distinguished from the case of *Lyon* v. *Royal Society of Good Fellows*, 153 Mass. 83, cited by counsel for defense.    In that case the money never went into the possession of the company, or its treasurer.

The difficulty, where a waiver is alleged, in the absence of written proof of the fact, generally arises from the effect to be given to the acts of agents in their dealings with the assured. Undoubtedly such agents, if they bind the company, whether it be a mutual benefit or stock company, must have authority to waive a

compliance with the conditions upon a breach of which a forfeiture is claimed, or to waive the forfeiture when once incurred, or their acts and dealings in waiving such compliance or forfeiture must be subsequently ratified or approved by the company. *Swett* v. *Citizens Mutual Relief Soc.*, supra. It is upon this latter ground that many of the decisions have turned when the question of waiver of compliance or of forfeiture has come before the courts. The law of agency, to be sure, is the same, whether applied to the act of the agent in undertaking to continue the insurance, or to any other act for which the principal is sought to be held responsible.

The rule that no one shall be permitted to deny that he intended the natural consequences of his acts, which have induced others to act upon them, is as applicable to insurance companies as to individuals.

If applied to the case at bar, this principle will serve to solve the question presented. The association, notwithstanding the assistant secretary was not authorized to waive a compliance with the conditions annexed to the contract of insurance, received from their agents the money paid by the assured upon assessments levied upon him. It was not received upon any conditions accompanying such acceptance, as in the case of *Shea* v. *Mass. Benefit Assoc.*, supra. Nor was it ever returned to the assured, nor was there any notice of objection to its payment, acceptance or retention ever given to the assured. From anything that appears in the case, it still remains in the hands of the association or its agents.

The analogy between the case under consideration and that of *Rice* v. *New England Mutual Aid Soc.*, 146 Mass, 248, is very striking. In that case, as in this, the defendant was a mutual insurance company. There was default of payment of premiums when due, and subsequent assessment by the company, as in this, and payment made and received after such default. There was no determination by the company that the certificate for the time being should be considered or treated as not in force or suspended; and in making the subsequent assessments there was no act of the company manifesting intention to exclude the assured; nor was

there any condition annexed to the assessments subsequently made, or to the acceptance of the payment of them by the assured. And there, as in other cases to which we have referred, the company was held to have waived its right to insist upon a forfeiture of the certificate upon the ground that the subsequent assessments and acceptance of the money paid upon them, constituted such waiver.

The language of the court in the case of *Ins. Co.* v. *Wolff*, 95 U. S. 326, 330, may well be applied to the case at bar. "If, therefore," say the court, "the conduct of the company in its dealings with the assured in this case . . . . has been such as to induce a belief that so much of the contract as provides for a forfeiture if the premium be not paid on the day it is due, would not be enforced if payment were made within a reasonable period afterwards, the company ought not, in common justice, to be permitted to allege such forfeiture against one who has acted upon the belief, and subsequently made the payment. And if the acts creating such belief were done by the agent and were subsequently approved by the company, either expressly or by receiving and retaining the premiums, the same consequences should follow."

As the case is before this court on an agreed statement of facts, the exceptions having been waived, the entry should be,

*Judgment for plaintiff.*